FILED'09 JUN 29 16:11 USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RONALD JOHNSON,

        Petitioner,

    v.

JEAN HILL,

        Respondent.

Civil No. 07-872-PA

OPINION AND ORDER

    Alison M. Clark
    Assistant Federal Public Defender
    101 S.W. Main Street, Suite 1700
    Portland, Oregon 97204

        Attorney for Petitioner

    John R. Kroger
    Attorney General
    Jacqueline Sadker
    Assistant Attorney General
    Department of Justice
    1162 Court Street NE
    Salem, Oregon 97310

        Attorneys for Respondent

///

1 - OPINION AND ORDER

PANNER, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 in which he seeks to challenge the legality of his underlying conviction for Attempted Aggravated Murder. For the reasons which follow, the Amended Petition for Writ of Habeas Corpus (#33) is denied.

## BACKGROUND

On August 24, 1998, Detective Michael Wilson ("Detective Wilson") attempted to serve an arrest warrant on petitioner, who had a history of fleeing to avoid capture. Respondent's Exhibit 103, pp. 57, 63. When Detective Wilson located petitioner in an automobile at a Hermiston residence, petitioner sped away and, following a high-speed chase, abandoned his car and continued to flee on foot. *Id* at 60-61.

Detective Wilson abandoned the chase, but contacted his twin brother, State Trooper Mitch Wilson (hereinafter referred to only as "Wilson"), and informed him of the chase. This conversation led Wilson to look for petitioner at a particular residence outside of Hermiston. *Id* at 67. When Wilson approached the residence, petitioner saw him coming and ran away. *Id* at 68.

Wilson ultimately found petitioner hiding underneath a storage shed. When petitioner got out from underneath the shed, Wilson attempted to subdue him with pepper spray. The pepper spray,

2 - OPINION AND ORDER

however, did not discharge. *Id* at 72. At that point, petitioner
again began to run away with Wilson in pursuit. *Id.*

During the chase, petitioner tripped, and Wilson caught up
with him, gun drawn. Wilson testified that he "got [his] gun in
too close to [petitioner]," and petitioner grabbed the barrel of
the firearm, thereby gaining leverage over the weapon. *Id* at 73.
The two men fell to the ground wrestling for control of the gun.
Petitioner brought the gun up to Wilson twice. *Id* at 74. Much of
Wilson's testimony was demonstrative, such as when he testified
that during the critical portion of the struggle, petitioner "came
back up with that gun and he shoved it clear back up in here, right
here." *Id* at 73. Wilson found himself looking down the barrel of
his firearm, and he "absolutely" believed petitioner was trying to
kill him. *Id* at 73, 75.

Following his testimony, Wilson and his brother participated
in a demonstrative re-enactment of the crime for the jury to see.
*Id* at 77. At the end of the presentation of the State's evidence,
counsel for petitioner moved for a judgment of acquittal. Counsel
argued that the State's evidence failed to offer any evidence that
petitioner ever intended to kill Wilson. The trial court found
that the State had presented sufficient evidence to allow the jury
to make a judgment on the issue of intent. It therefore denied the
motion, and allowed the case to proceed. *Id* at 121.

3 - OPINION AND ORDER

Petitioner took the stand in his own defense and testified that he did, indeed, run from Wilson, but claimed that the officer was running after him with his gun drawn, verbally threatening to shoot him. *Id* at 144. According to petitioner, Wilson tried to strike him in the face with his firearm. *Id* at 145. Petitioner denied ever reaching for the firearm or touching its barrel, claiming he only seized the officer by his wrist during the struggle. *Id* at 145, 152, 156.

The jury convicted petitioner of Aggravated Murder with a Firearm, Escape in the Third Degree, and Resisting Arrest. Respondent's Exhibit 102. Because petitioner was on probation at the time of his offenses, the trial judge entered a departure sentence. As a result, petitioner received 230 months in prison on the Attempted Aggravated Murder conviction, and concurrent one-year sentences on the Escape and Resisting Arrest convictions. Respondent's Exhibit 105, pp. 7, 8.

Petitioner filed a direct appeal wherein counsel did not assign as error the trial court's ruling on petitioner's motion for a judgment of acquittal. The Oregon Court of Appeals affirmed the trial court's decision without opinion, and the Oregon Supreme Court denied review. *State v. Johnson*, 172 Or. App 765, 19 P.3d 386, *rev. denied*, 332 Or. 305, 27 P.3d 1045 (2001).

Petitioner filed for post-conviction relief ("PCR") in Malheur County where the Circuit Court denied relief. The Oregon Court of

4 - OPINION AND ORDER

Appeals affirmed the lower court without opinion, and the Oregon Supreme Court denied review. *Johnson v. Hill*, 209 Or. App. 169, 146 P.3d 1170 (2006), *rev. denied*, 342 Or. 503, 155 P.3d 874 (2007).

Petitioner filed this federal habeas corpus case on June 11, 2007 in which he pursues a single ground for relief. Specifically, petitioner alleges that appellate counsel was ineffective when he failed to attack the sufficiency of the evidence presented at trial in support of his charge and conviction for Attempted Aggravated Murder.

**DISCUSSION**

I.    **Standard of Review**

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that

5 - OPINION AND ORDER

contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410. The state court's application of clearly established law must be objectively unreasonable. *Id* at 409.

Where, as here, a state court reaches a decision on the merits but provides no reasoning to support its conclusion, the federal habeas court must conduct an independent review of the record to determine whether the state court clearly erred in its application of Supreme Court law. *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). In such an instance, although the court independently reviews the record, it still lends deference to the state court's ultimate decision. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

///

///

6 - OPINION AND ORDER

## II. **Analysis**

Petitioner faults his direct appellate attorney for not raising a due process claim based on the trial court's decision to deny his motion for a judgment of acquittal. Because no Supreme Court precedent is directly on point that corresponds to the facts of this case, the court uses the general two-part test the Supreme Court has established to determine whether petitioner received ineffective assistance of counsel. *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1419 (2009). First, petitioner must show that his lawyer's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689. An appellate attorney "who files a merits brief need not (and should not) raise every non-frivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000).

Second, petitioner must show that his lawyer's performance prejudiced the defense. The appropriate test for prejudice is whether the defendant can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694.

7 – OPINION AND ORDER

A petitioner wishing to bring a *Strickland* claim based on his
appellate attorney's failure to raise a particular claim must not
only show that the claim had merit, but must also demonstrate that
the omitted claim was "clearly stronger than issues that counsel
did present." *Robbins,* 528 U.S. at 288. When *Strickland's* general
standard is combined with the standard of review governing 28
U.S.C. § 2254 habeas corpus cases, the result is a "doubly
deferential judicial review." *Mirzayance*, 129 S.Ct. at 1420.

In addition to this "doubly deferential" review, challenges to
the sufficiency of the evidence to sustain a conviction must be
reviewed by viewing the facts in the light most favorable to the
prosecution to determine if any rational trier of fact could have
found the essential elements of the crime had been proven. *State
v. Rose*, 311 Or. 274, 281, 810 P.2d 830 (1991). Thus, the court
must determine whether the Oregon state courts unreasonably applied
Supreme Court law when they concluded, taking the facts in the
light most favorable to the prosecution, that appellate counsel's
decision to omit the due process claim fell within the wide range
of reasonable professional assistance accorded to attorneys.

Under Oregon law, "[a] person is guilty of an attempt to
commit a crime when the person intentionally engages in conduct
which constitutes a substantial step toward commission of the
crime." ORS 161.405. The legislative history of the "substantial
step" test "leaves with the courts and juries the duty to decide

what as a matter of fact is a substantial step.  It is felt that specificity beyond this would be self-defeating."  Oregon Criminal Code, Commentary to ORS 161.405 (§ 54).  The Oregon Supreme Court has held that "[e]vidence of a defendant's intent is rarely, if ever, proven by direct evidence.  Intent is an operation of the mind, and it is seldom susceptible of direct proof." *Rose*, 311 Or. at 282.

Petitioner argues that he never had operational control of the firearm and that he was simply attempting to resist arrest, not kill the officer.  He maintains that there was no evidence from which a jury could conclude that he took a substantial step towards murdering Wilson, therefore the State could not have proven his guilt as to Attempted Aggravated Murder.

Appellate counsel explained his decision not to present this issue to the Oregon Court of Appeals as follows:

> The second allegation complains that I failed to raise a motion for a judgment of acquittal.  Again, review of the brief confirms that this allegation is correct.  However, I decided to focus the Court of Appeals' attention on what were, in my judgment, better issues.  A motion for judgment of acquittal has a standard of review that results in very few cases being reversed on insufficiency grounds.  After review of the entire record, in the light most favorable to the state with all conflicts in the evidence resolved in the state's favor and all reasonable inferences going to the state, I concluded that this issue would only detract from the better issues I raised in the brief.

Respondent's Exhibit 117, p. 2.

An independent review of the record shows that counsel's decision was strategically sound. Specifically, Wilson testified that he was looking down the barrel of the firearm, and that defendant "brought [the gun] back up to me twice." Respondent's Exhibit 103, pp. 73-74. These events led Wilson to conclude that he thought he "better do something now or this man is going to kill me." *Id* at 74. He also testified that "based on that incident there, I believe he was trying to kill me." *Id* at 75. Wilson expressed "[n]o doubt, whatsoever" about petitioner's intent to kill him. *Id.* A jury could have reasoned that petitioner was not, in fact, trying to simply wrestle the gun away from Wilson, but was intentionally pointing the firearm at Wilson with the intent to fire the weapon if given the opportunity. Thus, a jury could have concluded, as Wilson did, that petitioner, who had leverage on the weapon, was trying to kill him.

In addition, appellate review of this claim is quite difficult because much of the Wilson's testimony was demonstrative: "After I went down, **I kind of lifted up like that.** That was the first time, when he came back up with that gun and he shoved it **clear back up in here, right here.** His hand hit **right in here.** I looked down and I'm looking down the barrel and that's not a good feeling." *Id* at 73 (emphasis added). It is impossible to determine if "right here" means that petitioner continued to position the barrel of the firearm between Wilson's eyes, to his temple, etc. The prosecution

also staged a visual re-enactment of the crime for the jury. *Id* at 77. Thus, the jury was privy to more information than an appellate court (or habeas court) ever would be. This indirect evidence of intent, and any inference of intent, is best left to the judgment of a jury.

At a minimum, it is difficult for this court to conclude that the Oregon state courts unreasonably applied clearly established federal law in determining that appellate counsel reasonably exercised his judgment when he elected to drop this claim in light of the standard of review which is applied to motions for judgment of acquittal. *See Jones v. Barnes*, 463 U.S. 745, 754 (1983) (it would be improper for judges to second-guess reasonable professional judgments of appointed counsel). Accordingly, upon an independent review of the record, the state court decisions denying relief on petitioner's ineffective assistance of appellate counsel claim are entitled to deference.

## CONCLUSION

For the reasons identified above, the Amended Petition for Writ of Habeas Corpus (#33) is DENIED.

IT IS SO ORDERED.

DATED this _29_ day of June, 2009.

Owen M. Panner
United States District Judge

11 - OPINION AND ORDER